IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


HAROLD THOMAS, JR.,
      Petitioner,

vs.                                                                Case No.:  5:11cv332/MMP/EMT

KENNETH S. TUCKER,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 23).  Petitioner filed a reply (doc. 27).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 23).[1]  Petitioner was charged in the Circuit Court in and for Bay County, Florida, with one count of aggravated stalking in Case No. 2008-CF-0371 for conduct that occurred

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 23).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

on January 25, 2008, and another count of aggravated stalking in Case No. 2008-CF-0534 for conduct that occurred on February 24, 2008 (Ex. C at 236, 237). On August 11, 2008, the cases were consolidated, and an amended information was filed charging Petitioner with one count of aggravated stalking for conduct that occurred on or about December 19, 2007 through February 24, 2008 (Ex. C at 229). Following a jury trial on August 15, 2008, Petitioner was found guilty as charged (Ex. D, Ex. C at 90). On September 2, 2008, he was sentenced to sixty (60) months of imprisonment with pre-sentence jail credit of 182 days (Ex. C at 359–82, Ex. K at 256–60).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-4338 (Ex. C at 308, Ex. E). The First DCA affirmed the judgment per curiam without written opinion on October 9, 2009, with the mandate issuing October 27, 2009 (Exs. H, I). Thomas v. State, 19 So. 3d 316 (Fla. 1st DCA 2009) (Table). Petitioner did not seek further review.

On September 2, 2010, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. K at 16–28). In an order rendered October 1, 2010, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty (30) days (id. at 114). Petitioner filed an amended motion on October 21, 2010 (id. at 241–53). The state circuit court summarily denied it on November 24, 2010 (id. at 254–55). Petitioner appealed the decision to the First DCA, Case No. 1D11-0202 (id. at 304). The First DCA affirmed the judgment per curiam without written opinion on March 21, 2011, with the mandate issuing May 23, 2011 (Exs. L, O). Thomas v. State, 60 So. 3d 1058 (Fla. 1st DCA 2011) (Table).

On July 29, 2011, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D11-3945, alleging ineffective assistance of appellate counsel (Ex. Q). The First DCA denied the petition on the merits on August 31, 2011 (Ex. S). Thomas v. State, 68 So. 3d 973 (Fla. 1st DCA 2011) (Mem).

On September 5, 2011, Petitioner filed a second Rule 3.850 motion (Ex. U at 29–41). In an order rendered September 14, 2011, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty (30) days (id. at 42).

Petitioner filed an amended motion on September 19, 2011 (*id.* at 43–61).  The state circuit court summarily denied it on November 1, 2011 (*id.* at 63–64).  Petitioner appealed the decision to the First DCA, Case No. 1D11-6159 (Ex. U at 80, Ex. V).  The First DCA affirmed the judgment per curiam without written opinion on January 19, 2012, with the mandate issuing February 14, 2012 (Exs. X, Y).  Thomas v. State, 78 So. 3d 540 (Fla. 1st DCA 2012) (Table).

Petitioner filed the instant federal habeas action on October 7, 2011 (doc. 1).  Respondent does not dispute the timeliness of the petition.

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams

v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was

described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied—the state court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct.

2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed

that on any issue raised in a federal habeas petition upon which there has been an adjudication on

the merits in a formal State court proceeding, the federal court should first ascertain the "clearly

established Federal law," namely, "the governing legal principle or principles set forth by the

Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S.

63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme

Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle,

138 F.3d 917, 923 (11th Cir. 1998), overruled on other grounds by Parker v. Head, 244 F.3d 813,

835 (11th Cir. 2001).

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the
Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529
U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas,
and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was
joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that

the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order

to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust

---

federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. See Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. Id. The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. Id.

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

Ground One: "Petitioner rights [sic] to due process of law was [sic] violated on Case #08-371G."

Ground Two: "Petitioner rights [sic] to due process of law was [sic] violated on Case #08-534G."

Ground Three: "Petitioner rights [sic] to due process of law was [sic] violated on Amended Information consolidating Case #08-534 into Case #08-371G."

Petitioner states officers David Sanders and Jason Klingensmith testified they arrested him on January 25, 2008 and February 24, 2008, respectively, based upon hearsay statements of Cassandra Granger and Octavia Palmore (doc. 1 at 4, 8–13).[7] He asserts six months after his arrest and three days before trial, the State filed an amended information consolidating Case No. 2008-CF-371 into Case No. 2008-CF-534, without a "new" police report, investigation, discovery, arrest warrant, arrest, or "victim's testimony" (*id.* at 5, 13–17). He contends his conviction was based upon hearsay, which violated his rights to due process and equal protection (*id.* at 47–51). He asserts he raised this claim in a motion for judgment of acquittal in the trial court (*id.*).

---

[7] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Respondent contends Petitioner's claims raise purely issues of state law, despite his couching them in terms of due process and equal protection (doc. 23 at 6, 10, 11–12).  Respondent additionally contends Petitioner failed to exhaust these claims, because he failed to raise them on direct appeal of his conviction, which was the procedurally proper method of raising them (*id.* at 6–8, 10–11, 12). Respondent contends any attempt to return to state court would be futile; therefore, the claims are procedurally barred from federal review (*id.* at 8–9, 11, 12).  Notwithstanding these defenses, Respondent contends Petitioner's claims are without merit (*id.* at 9–10, 11, 12–13).

Review of the record demonstrates that Petitioner did not raise any of these claims in state court.  On direct appeal, he raised claims of trial court error with regard to the court's admission of evidence of events that occurred prior to December 19, 2007 (Ex. E).[8]  In his postconviction motions, he raised only claims of ineffective assistance of counsel (with the exception of a claim of newly discovered evidence, addressed *infra* in Ground Four) (Ex. K at 241–53, Ex. U at 43–61).  In his state habeas petition, he raised only claims of ineffective assistance of appellate counsel (Ex. Q). Therefore, Petitioner failed to exhaust his due process and equal protection claims in the state courts. Further, he may not take a second appeal of his conviction, and any attempt to raise the claims in a Rule 3.850 motion would be subject to dismissal as impermissibly successive, pursuant to Rule 3.850(f).  Therefore, the claims are procedurally defaulted for purposes of federal habeas.

Notwithstanding Petitioner's failure to exhaust, the claims are without merit.  Petitioner contends he was arrested based upon hearsay evidence.  To the extent Petitioner claims that his arrest could not be properly based upon statements of other persons, his claim is without merit.  The evidence supporting an officer's decision to arrest an individual need not reach the elevated standard required to sustain a conviction, as the standard of proof for probable cause only requires a probability of criminal activity.  *See* Spinelli v. United States, 393 U.S. 410, 419, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).  "[T]he nature of the [probable cause] determination itself . . . does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard

---

[8] On December 19, 2007, the victim obtained an injunction against Petitioner prohibiting him form stalking her, having contact with her, or coming within 500 feet of her.  The amended information charged him with following or harassing the victim from December 19, 2007 through February 24, 2008, after having been served with the injunction (Ex. C at 229).

demands. . . ." Gerstein v. Pugh, 420 U.S. 103, 121, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975).  Probable cause "exists where an officer 'has reasonable grounds to believe that the suspect has committed a felony.  The standard of conclusiveness and probability is less than that required to support a conviction.'" Chavez v. State, 832 So.2d 730, 747 (Fla. 2002) (quoting Blanco v. State, 452 So.2d 520, 523 (Fla. 1984)).

"To establish probable cause, an officer is required to conduct a reasonable investigation, but the officer does not have to take every conceivable step to eliminate the possibility of convicting an innocent person[,]" City of Clearwater v. Williamson, 938 So. 2d 985, 990 (Fla. 2d DCA 2006), and law enforcement officers are afforded some latitude for error.  City of St. Petersburg v. Austrino, 898 So. 2d 955, 958 (Fla. 2d DCA 2005) (citing Lee v. Geiger, 419 So. 2d 717, 719 (Fla. 1st DCA 1982)).  "[T]he receipt of information from someone who it seems reasonable to believe is telling the truth is adequate." Williamson, 938 So. 2d at 991 (internal quotation marks omitted).

As the Seventh Circuit recently summarized:

> Probable cause is a determination made from assessing whether, based on the facts and circumstances at the time of the arrest, a reasonable officer would conclude that the suspect has committed or is committing a crime.  Woods v. City of Chicago, 234 F.3d 979, 996 (7th Cir. 2000).  The sufficiency of the evidence for a determination of probable cause need not be enough to support a conviction or even enough to show that the officer's belief is more likely true than false.  *Id.*  As such, "as long as a reasonably credible witness or victim informs the police that someone has committed a crime, or is committing, a crime, the officers have probable cause." Spiegel v. Cortese, 196 F.3d 717, 723 (7th Cir. 1999) (quoting Jenkins v. Keating, 147 F.3d 577, 585 (7th Cir. 1998)).  Additionally, "this court has emphasized that once probable cause has been established, officials have 'no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence.'" *Id.* (quoting Eversole v. Steele, 59 F.3d 710, 718 (7th Cir. 1995)).

Matthews v. City of East St. Louis, 675 F.3d 703, 706–07 (7th Cir. 2012).

In the instant case, the investigative reports of the Parker Police Department and the sworn affidavits of witnesses (Cassandra Granger, Chala Roberson, Angela Banks, Octavia Palmore, and Richard Spencer) were sufficient to establish probable cause to arrest Petitioner (Ex. C at 1–4, 53–57, 172–73, Ex. K at 165, 173, 175–76).  Therefore, Petitioner failed to demonstrate a due process or equal protection violation with respect the sufficiency of the evidence to support his arrest.

To the extent Petitioner is claiming that his conviction was based upon hearsay statements, his claim is equally meritless.  Three of the witnesses who provided information to police, Cassandra Granger, Angela Banks, and Octavia Palmore, testified at trial regarding their personal observations, and none of these witnesses included hearsay statements in their testimony (Ex. D).  Further, with one exception, the only hearsay objections lodged at trial during Officer Sanders's testimony were sustained (*id.* at 255–56, 258).  The exception was the question about whether the Parker Police Department gave a trespass warning to Petitioner on January 14, 2007, which is a "verbal act," and, therefore, not hearsay (*id.* at 260).  Officer Klingensmith testified that he arrested Petitioner based on a warrant, as well as his own additional charge for aggravated stalking (*id.* at 273).  The only hearsay objection to Officer Klingensmith's testimony was sustained (*id.* at  277).  Therefore, Petitioner failed to demonstrate a due process or equal protection violation to the extent he claims his conviction was based upon hearsay.

Finally, Petitioner failed to demonstrate any impropriety with respect to consolidation of criminal cases and charges.  He failed to cite any authority for his contention that an amended information must be supported with a "new" police report, investigation, discovery, arrest warrant, arrest, and victim's testimony.  Further, Petitioner failed to show that the consolidation affected his constitutional rights.   By consolidating the two cases, the State merely combined two separate charges of aggravated stalking, one based upon an event that occurred on or about January 25, 2008, and one based upon an event that occurred on or about February 24, 2008, into a single charge of aggravated stalking based upon the events that occurred from December 19, 2007 through February 24, 2008 (Ex. C at 229, 236, 237).   Petitioner does not allege the consolidation prejudiced the defense of those charges in any way.  Therefore, he failed to demonstrate a constitutional violation based upon the consolidation.

B.    Ground Four:  "Newly discovered evidence.  Conviction obtained by prosecution withholding evidence favorable to the Petitioner, innocent [sic]."

Petitioner asserts the prosecutor failed to disclose the time and date that a six-foot high wooden privacy fence was constructed in Angela Banks's (the victim's) back yard (doc. 1 at 5, 8–10, 17, 52).  He states on August 14, 2008, the day before trial, the prosecutor visited Angela Banks's home with Officer Klingensmith and photographed her front and back yards (*id.*).  He states the

photographs showed a six-foot high wooden privacy fence across Ms. Banks's back yard (*id.*). Petitioner states this six-foot high wooden fence was present on the day he was arrested, February 24, 2008 (*id.*). He contends Octavia Palmore, a witness for the State, lied when she testified that the wooden privacy fence was not in Angela Banks's back yard on February 24, 2008, when she saw Petitioner jump over a waist-high chain link fence in the back yard (*id.*). He states if the prosecutor had disclosed the date and time of construction of the wooden privacy fence, the defense could have shown the falsity of Octavia Palmore's testimony and proven that Petitioner was not on Ms. Banks's property (*id.*). Petitioner asserts he raised this claim in the state courts as a claim of ineffective assistance of trial counsel, based upon counsel's failure to investigate the wooden privacy fence, which allegedly would have proven he did not jump over a chain link fence to exit Angela Banks's back yard (*id.* at 5).

Respondent contends to the extent Petitioner raises a <u>Brady</u> or <u>Giglio</u> claim,[9] it is unexhausted and now procedurally defaulted (doc. 23 at 13). Respondent contends Petitioner presented a somewhat similar claim of newly discovered evidence as Ground Four in his Rule 3.850 motion; however, he did not fairly present it as a federal claim, and the state court did not consider it as such (*id.* at 13–14). Therefore, the claim was not exhausted (*id.*). Respondent further contends any claim of prosecutorial misconduct could have and should have been raised on direct appeal, because the existence of the six-foot wooden fence was within Petitioner's knowledge (*id.* at 14, 16). Respondent contends notwithstanding the failure to exhaust, the claim is without merit (*id.* at 14–16). Respondent contends there cannot be a violation of <u>Brady</u> or <u>Giglio</u>, because information regarding the existence of the six-foot wooden fence was known and available to Petitioner prior to trial (*id.*). Additionally, Petitioner failed to demonstrate that the allegedly withheld information was material to his conviction, since the victim, Ms. Banks, testified she saw Petitioner in her yard before he jumped over the fence (*id.*). Therefore, Petitioner is not entitled to relief on Ground Four.

---

[9] <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).

1.      Ineffective Assistance of Counsel

To the extent Petitioner presents a claim of ineffective assistance of counsel based upon counsel's failure to investigate whether the wooden privacy fence existed on February 24, 2008, he exhausted this claim by raising it as Ground 1 his amended Rule 3.850 motion filed October 21, 2010 (Ex. K at 247).  The state circuit court adjudicated the claim as follows:

> In ground one, Defendant alleges that his counsel was ineffective for failing to investigate and prepare his case for trial. . . . The Defendant [ ] argues that had trial counsel investigated the scene, they would have found that the waist high chain link fence across the victim's back yard that witnesses alleged Defendant climbed over, is actually a six-foot tall wooden privacy fence.  This [ ] is a matter that was discussed during the trial.  See [Trial Transcript] at 241–247, 276, 289, 292–295, 347–348, and 350.  Defense counsel cross-examined the witnesses regarding this issue.  A witness to the incident testified that the chain link fence was replaced with a privacy fence after the incident.  See Id. at 242–243.  Law enforcement also photographed the fence on the day of the incident.  This evidence was introduced at trial and defense counsel cross-examined the officer regarding the photographs.  See Id. at 275–276.

(Ex. K at 254).  The First DCA affirmed the circuit court's decision without written opinion (Ex. L).

a.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  Id. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. Id. at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

b.      Federal Review of State Court Decision

Petitioner failed to demonstrate that the reasoning or the result of the state court decision contradicts or is an unreasonable application of Strickland.  There is no reasonable probability the jury would have acquitted Petitioner of aggravated stalking if defense counsel had investigated whether the wooden privacy fence was in Angela Banks's back yard at the time of the offense conduct.  Cassandra Granger testified that both before and after December 25, 2007, and in January of 2008, she saw Petitioner outside Ms. Banks's house looking through things in her yard and in her windows (Ex. D at 205–06, 214–15).  She testified that on the evening of January 25, 2008, she saw Petitioner in Angela Banks's yard looking through her windows (*id.* at 202, 207–09, 217–18).  On cross-examination, she admitted she could not testify for certain that the man she saw that night was Petitioner (*id.* at 226).  However, she testified that the man she saw on January 25 did the same things she had previously seen Petitioner do, and the man was the same size and color as Petitioner (*id.* at 227).  She also testified that later in the evening on January 25, 2008, her mother saw Petitioner at Mr. Menifee's house, which was within 500 feet of Ms. Banks's house (*id.* at 229).

Octavia Palmore, who lived in a duplex that shared wall with Ms. Banks, testified she walked out of her side of the duplex that morning and saw Petitioner peeping in Ms. Banks's windows (Ex. D at 230–32, 237).  She testified she went to Ms. Banks's side of the duplex and told her what she

saw (*id.* at 238).  Ms. Palmore testified Petitioner ran around Ms. Banks's house, "jumped the gate," and "jumped another gate" (*id.* at 232).  She testified she went to Ms. Banks's house and told her what she saw (*id.* at 238).  She testified she and Mrs. Banks walked around the house, and she saw Petitioner behind someone else's house "jumping the neighbor's fence," and then running through yards and jumping fences (*id.* at 239, 241–42, 246).  When questioned about a particular fence, Ms. Palmore testified the fence was a waist-high chain link fence, and after the February 24 incident, the property owner erected a privacy fence (*id.* at 242–43).  Ms. Palmore additionally testified she recalled seeing Petitioner looking through Ms. Banks's window three to four times during the period December 19, 2007 through February 24, 2008, but she was not sure of the exact dates (*id.* at 233).

Angela Banks testified she lived at 539 North Ninth Street (Ex. D at 89).  She testified she obtained a temporary injunction against repeat violence on December 19, 2007, which required Petitioner to stay 500 feet away from her (*id.* at 102–05, 155).  She testified that Petitioner was present at the hearing which culminated with issuance of the injunction (*id.*).  Ms. Banks testified she heard rattling of her barbeque grill and garbage can outside her bedroom window on January 25, 2008 (*id.* at 122).  She testified the third time she heard the rattling, she called the police (*id.*).  Ms. Banks testified that on the morning or February 24, 2008, Octavia Palmore came to her door, which led to her going outside, where she saw Petitioner jumping over a fence on her neighbor's property into the next neighbor's property (*id.* at 176–77).  Ms. Banks testified she saw Petitioner turn a corner, so she ran to the front of her neighbor's property and she and Petitioner "looked [each other] in the face" (*id.* at 177–79).  She testified Petitioner squatted down and attempted to hide in some bushes, and then he ran in another direction (*id.* at 178–81).  When asked whether there was a fence in her back yard, Ms. Banks testified, "There used to be a big wire fence.  Now he's put up a big privacy fence." (*id.* at 107).

Officer David Sanders testified he responded to Angela Banks's report of a suspected prowler on January 25, 2008 (Ex. D at 253–55).  He testified he spoke with Ms. Banks, observed footprints and disturbed leaves in her front yard outside her bedroom window, and obtained a description of the prowler from Cassandra Granger and another witness (*id.* at 256).  He testified he patrolled the neighborhood for approximately seven minutes but did not see Petitioner (*id.* at 266).

Officer Jason Klingensmith testified that on February 24, 2008, he responded to a report of an unwanted guest at Angela Banks's house (Ex. D at 273–74).  He testified he observed Petitioner on Hickory Street crossing Ninth Street (*id.* at 278).  Klingensmith testified he pointed to Petitioner and asked Octavia Palmore if he was the man she saw looking in Angela Banks's window, and Palmore responded yes (*id.* at 278–79, 282).  He saw Petitioner squatting near a truck at the corner of Hickory and Ninth Streets and detained him (*id.* at 274, 282–83).  Officer Klingensmith confirmed that Mr. Menifee's house was within 500 feet of Ms. Banks's house (*id.* at 303).

Initially, Petitioner has produced no evidence, other than his own self-serving allegation, that the wooden privacy fence existed at the time of the offense conduct.  Additionally, even if such evidence existed and was presented to the jury, it would have had no impeaching effect on (1) Cassandra Granger's testimony that she and her mother saw Petitioner within 500 feet of Angela Banks's house in December and January of 2008, (2) Octavia Palmore's testimony that she saw Petitioner looking in Angela Banks's window on February 24, 2008, or (3) Angela Banks's testimony that she saw Petitioner in her back yard on February 24, 2008, and that minutes later she "looked him in the face" from her neighbor's property.  Therefore, Petitioner failed to show a reasonable probability the jury would have acquitted him if defense counsel had presented evidence that the wooden privacy fence existed at the time of the offense conduct.  He thus failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was contrary to or an unreasonable application of <u>Strickland</u>.

## 2.   <u>Brady and Giglio Claims</u>

To the extent Petitioner raises a federal claim based upon alleged <u>Brady</u> and <u>Giglio</u> violations, he failed to exhaust a federal claim in the state courts.  In Ground Four of Petitioner's Rule 3.850 motion, Petitioner claimed that the prosecutor "unconstitutionally" failed to disclose the date and time the wooden privacy was constructed in Ms. Banks's back yard  (Ex. U at 56–58).  He asserted law enforcement did not photograph the fence on the day of his arrest, February 24, 2008, but they photographed it the day before trial (*id.*).  Petitioner asserted Octavia Palmore lied when she testified the wooden privacy fence replaced the waist-high chain link fence across Ms. Banks's back yard, which she saw Petitioner jump over (*id.*).  Petitioner asserted he could prove that the wooden privacy fence was there on February 24, 2008, with records from the company that constructed the

fence, and this "newly discovered evidence" would prove he was not on Angela Banks's property on February 24, 2008 (*id.*).  He contended the State should have obtained this information and provided it to the defense (*id.*).

To the extent Petitioner presents a federal due process claim in the instant federal petition, based upon the State's failure to disclose the date and time of construction of the wooden privacy fence, and the State's presentation of allegedly false testimony concerning whether the privacy fence was in place on February 24, 2008 (in Petitioner's reply, he argues his conviction violated federal law (doc. 27 at 1–2)), Petitioner did not fairly present a federal constitutional claim to the state courts.  In Ground Four of his amended Rule 3.850 motion, he did not refer to a federal constitutional issue, nor did he cite any cases discussing the United States Constitution.  Indeed, Petitioner did not even label his claim federal.  Therefore, Petitioner failed to exhaust a federal claim based upon the prosecutor's alleged suppression of evidence or presentation of false testimony.  *See* Baldwin, 541 U.S. at 32.

Petitioner failed to demonstrate cause for his failure to present the federal nature of his claim to the state courts.  Additionally, he failed to demonstrate he is entitled to federal review of his claim through the "fundamental miscarriage of justice" exception to the procedural bar.  Petitioner has not come forward with new, reliable evidence showing that the wooden privacy fence was actually constructed prior to February 24, 2008.  Nor has he shown it is more likely than not that no reasonable juror would have convicted him had the jury been presented with evidence of the date and time of construction of the fence.  Therefore, he is not entitled to a merits review of his Brady and Giglio claims.

Moreover, notwithstanding Petitioner's failure to exhaust his Brady and Giglio claims, both claims are without merit.  In Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.  The State has an obligation to disclose all exculpatory evidence within its constructive knowledge, including "evidence known to others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

Three elements establish a <u>Brady</u> violation: (1) the evidence must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice. <u>Banks v. Dretke</u>, 540 U.S. 668, 691, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004). The State's duty to disclose pertains only to evidence that is advantageous to the defense, including impeachment evidence, and which, if suppressed, would deprive him of a fair trial. <u>United States v. Bagley</u>, 473 U.S. 667, 675, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). In showing that the non-disclosed evidence was material, Petitioner must demonstrate that there is a reasonable probability ("a probability sufficient to undermine confidence") that the result of the proceeding would have been different had the evidence been disclosed. <u>Bagley</u>, 473 U.S. at 682. Petitioner need not demonstrate that, after discounting the inculpatory evidence in light of the evidence in question, there would not have been enough evidence to convict him; he need only show that he did not receive a fair trial in absence of the undisclosed evidence. <u>Kyles v. Whitley</u>, 514 U.S. 419, 434-35, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

To succeed on a claim that the State presented false evidence, thereby violating his due process rights, Petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material. *See* <u>Giglio v. United States</u>, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). For <u>Giglio</u> purposes, "the falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony *could have* affected the judgment of the jury.'" <u>United States v. Agurs</u>, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976)).

Petitioner failed to demonstrate a <u>Brady</u> violation, because he failed to show that the date and time of construction of the fence was within the State's constructive knowledge. Further, information regarding the existence of the privacy fence on February 24, 2008 was known by or available to Petitioner prior to trial (he affirmatively alleges in his state and federal postconviction filings that the privacy fence was there on February 24, 2008); and the defense could have obtained evidence of the exact date and time of construction of the fence through reasonably diligent efforts. Therefore, Petitioner failed to satisfy the suppression element of a <u>Brady</u> violation. *See* <u>United States v. Brown</u>, 628 F.2d 471, 473 (5th Cir. 1980) ("Truth, justice, and the American way do not [ ]

require[] the Government to discover and develop the defendant's entire defense. . . .  In no way can information known and available to the defendant be said to have been suppressed by the Government") (citing <u>Agurs</u>, 427 U.S. at 111); *see also, e.g.,* <u>United States v. Michtavi</u>, 390 Fed. App'x 852, 854 (11th Cir. 2010) (unpublished).

Additionally, Petitioner failed to demonstrate a <u>Giglio</u> violation.  <u>Assuming purely for the sake of argument</u> that Octavia Palmore's testimony that Ms. Banks's neighbor erected the privacy fence after February 24, 2008, was false, Petitioner has made no showing that the prosecutor knew that this testimony was false.  Therefore, Petitioner failed to establish a <u>Giglio</u> violation.

For the aforementioned reasons, Petitioner is not entitled to federal habeas relief on Ground Four.

## V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 10th day of August 2012.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).